[998 NYS2d 612]

The People of the State of New York, Plaintiff, v Caleb R. Thomas, Defendant.

City Court of Ithaca, December 24, 2014

*William E. Furniss*, Ithaca, for defendant.

*Gwendolyn P. Wilkinson*, *District Attorney*, Ithaca (*Brad Rudin* of counsel), for plaintiff.

## OPINION OF THE COURT

SCOTT A. MILLER, J.

Defendant, Caleb Thomas, moves for dismissal of the accusatory instruments charging one count of making graffiti (Penal Law § 145.60) and one count of possession of graffiti instruments (Penal Law § 145.65) upon the ground that such charges are facially insufficient pursuant to CPL 100.40. Defendant also moves, pursuant to CPL 170.40, for dismissal of all charges in the furtherance of justice. The court has reviewed the defendant's moving papers and the People's response in opposition thereto.

Here, the People allege that on June 8, 2014 in the City of Ithaca at 4:08 a.m. the defendant, Thomas, did spray-paint a single pink fairy on the public sidewalk in front of the Beverly J. Martin Elementary School.

For an information to be legally sufficient, it must contain nonhearsay allegations which establish, if true, every element of the offense charged and defendant's commission thereof (CPL 100.40). CPL 100.40 (1) expressly states that in order for an information to be legally sufficient:

> "(b) The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonablecause to believe that the defendant committed the offense charged in the accusatory part of the information; and

> "(c) Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant's commission thereof."

In *People v Casey*, the Court of Appeals explained, "[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading." (95 NY2d 354, 360 [2000].) In deciding a defense motion to dismiss an information for facial insuffi-

ciency, the court must "view the evidence in a light most favorable to the People." (*People v Waite*, 108 AD3d 985, 985 [3d Dept 2013].)

Defendant contends that both charges require the People to sufficiently allege that defendant lacked permission to spray-paint the fairy at issue. The People, in their answering papers concede that both charges are legally insufficient due to the omission of the lack of permission element. (*See* People's Oct. 10, 2014 answer; *see also People v Vinolas*, 174 Misc 2d 740 [Crim Ct, NY County 1997].) Therefore, the court *grants* defendant's motion to dismiss all charges pursuant to CPL 100.40 due to legal insufficiency. However, the People are likewise correct that this dismissal is without prejudice and the People may re-file the same charges if the legal deficiency can be cured. (*See MacFawn v Kresler*, 88 NY2d 859 [1996], relying upon *People v Nuccio*, 78 NY2d 102 [1991].)

## CPL 170.40 Motion to Dismiss in the Furtherance of Justice

Defendant also moves to dismiss the charges in the furtherance of justice pursuant to CPL 170.40 (1), which provides that a court may dismiss an accusatory instrument if it finds the "existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice." A compelling factor is present if the denial of the motion would be such an abuse of discretion as to shock the conscience of the court. (*People v Stern*, 83 Misc 2d 935 [Crim Ct, NY County 1975].) The defendant bears the initial burden of setting forth compelling factors in his motion papers. If this burden is not met, the court may summarily deny the motion.) *People v Schlessel*, 104 AD2d 501 [2d Dept 1984].) A "trial court's discretion to dismiss in the interest of justice is an undertaking to be sparingly exercised." (*People v Litman*, 99 AD2d 573, 574 [3d Dept 1984].) In determining whether to dismiss in furtherance of justice, the court is required to consider the following factors enumerated in CPL 170.40 (1):

> "(a) the seriousness and circumstances of the offense;
> "(b) the extent of harm caused by the offense;
> "(c) the evidence of guilt, whether admissible or inadmissible at trial;
> "(d) the history, character and condition of the de-

fendant;

"(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;

"(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;

"(g) the impact of a dismissal on the safety or welfare of the community;

"(h) the impact of a dismissal upon the confidence of the public in the criminal justice system;

"(i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;

"(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose."

In order to determine whether such "compelling factor, consideration, or circumstance exists, the court must, to the extent applicable, examine and consider, individually and collectively" the above delineated factors. (CPL 170.40 [1].) Furthermore, when considering the factors, the trial court must disclose on the record, the facts upon which the court's judgment is based. (*People v Clayton*, 41 AD2d 204 [2d Dept 1973].)

### (a) The Seriousness and Circumstances of the Offense

Defacement of property (private or public) by graffiti is certainly a serious matter. This court takes judicial notice that several years ago many properties within Ithaca were regularly defaced with ugly graffiti, and the blight was reaching near epidemic proportions. In recent months however, the City, through its Public Art Commission, has been as explosive as a paint gun and through several programs, Ithaca has been transformed into a public art wonderland. The Ithaca Mural Street Art and 21 Boxes art programs are just a few examples of the City's beautification of public spaces through artistic expression efforts. (*See* City of Ithaca, New York, Public Art Commission, http://www.cityofithaca.org/353/Public-Art-Commission; *see also* 21 Boxes, https://www.facebook.com/21Boxes.) This court's favorite public graffiti is just a few steps across from the courthouse on the Green Street garage. (*See* Dave Williams, *Sistine Green Street Parking Garage*, https://www.flickr.com/photos/38039613N08/7058658115.)

The particular nature of the graffiti must be examined in order to determine the seriousness of the offense. Where the

purpose of graffiti is not to deface, but to convey a social, political or artistic message, and such graffiti does not cause either actual or more than nominal damage to the public or private property, then the particular graffiti offense may be of such a de minimis nature that continued prosecution is unwarranted. Here, the defendant spray-painted one tiny pink fairy on a public sidewalk in front of an elementary school. Mr. Thomas was at all times polite and cooperative with law enforcement and freely admitted his creation. The sidewalk was not permanently defaced, but, in fact, a sprinkle of joyous whimsy was added. The court can only imagine the laughs ringing musically through the late spring morning air as children were welcomed by this spritely visage as they entered their school on one of those painstakingly long June days before the start of summer vacation.

> "[W]hen the first baby laughed for the first time, the laugh broke into a thousand pieces and they all went skipping about, and that was the beginning of fairies. And now when every new baby is born its first laugh becomes a fairy. So there ought to be one fairy for every boy or girl." (J.M. Barrie, *Peter Pan or the Boy Who Wouldn't Grow Up*, Act I, *The Nursery* [1904].)

### (b) The Extent of Harm Caused by the Offense

Very little actual harm was caused by this offense. Defendant has presented evidence that he extinguished the pink fairy rather easily with just a splash of water, reminiscent of how easily Dorothy dispatched the Wicked Witch of the West in L. Frank Baum's "The Wonderful Wizard of Oz." How sad the children must have been when they looked for their little pink fairy, but only to discover her departed.

### (c) The Evidence of Guilt, Whether Admissible or Inadmissible at Trial

The circumstantial evidence of defendant's guilt appears to be strong. The defendant admitted to creating the fairy and was also found in possession of paint that matched the fairy's complexion. Defendant however, does correctly point out to the court that there is no evidence that he lacked the City's permission to add a speckling of mirth to the gray concrete astride the school.

> "There may be fairies at the bottom of the garden.

There is no evidence for it, but you can't prove that there aren't any, so shouldn't we be agnostic with respect to fairies?" (Richard Dawkins, lecture extracted from The Nullifidian [Dec. 1994].)

## (d) The History, Character and Condition of the Defendant

Defendant, Caleb Thomas, is a 37-year-old man and has no previous criminal record. (*See People v Spagnola*, 19 Misc 3d 16 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2008].) Defendant Thomas has been and remains a devoted volunteer member of the City's Public Art Commission. He also leads bike tours of the City's public art. (*See* Matthew Hayes, *Ithaca Pedals Beauty, Stories Behind Murals*, Ithaca Journal [Oct. 16, 2014], available at http://www.ithacajournal.com/story/news/local/2014/10/16/ithaca-mural-bike-tour/17372537/.)

## (e) Any Exceptionally Serious Misconduct of Law Enforcement Personnel in the Investigation, Arrest and Prosecution of the Defendant

No law enforcement misconduct is alleged. To the contrary, it appears from the record that the Ithaca Police Department treated the defendant with professionalism, courtesy, politeness and respect.

## (f) The Purpose and Effect of Imposing Upon the Defendant a Sentence Authorized for the Offense

Defendant Thomas, if convicted, faces a sentencing range from a minimum of an unconditional discharge to a maximum of one year's incarceration. It would serve no purpose to impose any of the sentences within this range based upon the particular circumstances of this offense and based upon this defendant's particular history and character. Should defendant Thomas suffer a life long criminal record for this offense, surely the winged seraphs would cry out from Heaven above.

"[E]very time a child says 'I don't believe in fairies' there is a fairy somewhere that falls down dead." (J.M. Barrie, *Peter Pan or the Boy Who Wouldn't Grow Up*, Act I, *The Nursery* [1904].)

### (g) The Impact of a Dismissal on the Safety or Welfare of the Community

The welfare of Ithaca would not be served if creative, honest, and contributing members, such as Caleb Thomas, were prosecuted under the specific facts of this case. Here, all of the circumstances evince not evil intent, but rather enthusiasm and exuberance. This court finds that defendant Thomas' intent was to provide fleeting joy to school children, not to damage or deface public property. All the good people of Ithaca will rejoice that the creator of the pink fairy was liberated from further prosecution.

> "Faeries, come take me out of this dull world,
> "For I would ride with you upon the wind,
> "Run on the top of the disheveled tide,
> "And dance upon the mountains like a flame!" (William Butler Yeats, "The Land of Heart's Desire" [1894].)

### (h) The Impact of a Dismissal Upon the Confidence of the Public in the Criminal Justice System

The story of the criminal court system, in the end, must be the story about justice and the inherent goodness of humanity. A court must always, in each case, diligently examine all of the facts, circumstances, and arguments that are presented. The foundation of a legitimate legal system mandates that the rule of law must always apply. Yet, in order for a legal system to be humane, there must still exist at least the tiniest crack that allows a sliver of discretion to shine through when justice cries out for mercy in spite of the strict application of the law. The legislature wisely has granted the courts this discretion. (CPL 170.40.)

> "Don't you know . . . that everybody's got a Fairyland of their own?" (P.L. Travers, Mary Poppins [1934].)

### (i) Where the Court Deems it Appropriate, the Attitude of the Complainant or Victim with Respect to the Motion

The City of Ithaca is clearly and unequivocally opposed to continued prosecution of defendant Thomas. (*See* letter from JoAnn Cornish, Director of Planning & Dev. for City of Ithaca, dated Oct. 10, 2014.)

### (j) Any Other Relevant Fact Indicating That a Judgment of Conviction Would Serve No Useful Purpose

And the fairy—her pink flame is extinguished. She delighted Ithaca's children for just a moment and now like Lenore,* she is nevermore. Her ephemeral existence is now only a distant memory like that of childhood days long gone. There is no bringing back this pink fairy of youth.

> "What though the radiance which was once so bright
> "Be now forever taken from my sight,
> "Though nothing can bring back the hour
> "Of splendor in the grass, of glory in the flower;
> "We will grieve not, rather find Strength in what remains behind." (William Wordsworth, Ode: Intimations of Immortality from Recollections of Early Childhood [1804].)

While CPL 170.40 only permits a trial court to dismiss criminal charges in the interest of justice only in the "rare[st]" and most "unusual" of cases that "cr[y] out for fundamental justice beyond the confines of conventional considerations," this court, exercising its discretion carefully and "sparingly," has determined that this case of the singular pink fairy meets this stringent test. (*People v Belge*, 41 NY2d 60, 62-64 [1976].) The court has "sensitive[ly] balanc[ed]" all of the factors enumerated under CPL 170.40, has likewise considered the foregoing factors individually and collectively, and has concluded that there exist compelling factors that clearly demonstrate that continued prosecution of defendant, Caleb Thomas, would constitute a grave injustice. (*People v Rickert*, 58 NY2d 122, 127 [1983].)

Accordingly, the defendant's motion to dismiss the accusatory instruments in furtherance of justice is granted. Defendant's motion pursuant to both CPL 100.40 and 170.40 is granted, and all charges are dismissed.

---

* Edgar Allan Poe, The Raven (1845).